# EXHIBIT A

GLANCY PRONGAY & MURRAY LLP
Lionel Z. Glancy (SBN 134180)
Marc L. Godino (SBN 182689)
Danielle L. Manning (SBN 313272)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
E-mail: info@glancylaw.com

GREENSTONE LAW APC
Mark S. Greenstone (SBN 199606)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9156
Facsimile: (310) 201-9160
E-mail: mgreenstone@greenstonelaw.com

JAURIGUE LAW GROUP
Michael J. Jaurigue (SBN 208123)
  michael@jlglawyers.com
Abigail A. Zelenski (SBN 228610)
  abigail@jlglawyers.com
David Zelenski (SBN 231768)
  david@jlglawyers.com
300 West Glenoaks Boulevard, Suite 300
Glendale, California 91202
Telephone: (818) 630-7280
Facsimile: (888) 879-1697

*Attorneys for Plaintiff Justin Castillo*

**FILED**
AUG 0 2 2018
JAMES M. KIM, Court Executive Officer
MARIN COUNTY SUPERIOR COURT
by: J. Cron, Deputy

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## MARIN COUNTY

| | |
|---|---|
| JUSTIN CASTILLO, as an individual and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CAESARS ENTERTAINMENT CORPORATION and DESERT PALACE, LLC dba CAESARS PALACE HOTEL & CASINO,<br><br>Defendants. | Case No. CIV 1802716<br><br>**CLASS-ACTION COMPLAINT**<br><br>Violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227<br><br>**DEMAND FOR JURY TRIAL** |

***JURISDICTION AND VENUE***

1.     ***Jurisdiction***.  As alleged below, this is a civil action arising under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.  Federal and state courts have concurrent jurisdiction over suits arising under the TCPA.  See Mims v. Arrow Fin. Servs., LLC, 132 S. Ct. 740, 745 (2012).  This Court therefore has subject-matter jurisdiction over Plaintiff's cause of action.  Furthermore, this Court has personal jurisdiction over Defendants because, as alleged below, they have purposefully availed themselves of the resources and protections of California, and have intentionally targeted California citizens with the text messages that form the basis of this case.

2.     ***Venue***.  Venue is proper in this Court pursuant to California Code of Civil Procedure section 395, which provides that, "[i]f none of the defendants reside in the state . . . , the action may be tried in the superior court in any county that the plaintiff may designate in his or her complaint."  Cal. Civ. Proc. Code § 395(a).

***INTRODUCTORY STATEMENT***

3.     Plaintiff Justin Castillo brings this class action on behalf of himself, individually, and all others similarly situated against Defendants Caesars Entertainment Corporation ("CEC") and Desert Palace, LLC dba Caesars Palace Hotel & Casino ("Caesars Palace") pursuant to section 382 of the California Code of Civil Procedure.

4.     As alleged below, Defendants have violated the TCPA through their unauthorized contact of consumers on the consumers' respective cellular telephones using a virtual concierge platform known as "Ivy."  Specifically, Defendants have violated the TCPA by sending consumers unsolicited text messages for marketing and advertising purposes using Ivy, invading the consumers' right to privacy.

5.     Pursuant to 47 U.S.C. § 227(b)(3), Plaintiff and Class Members are entitled to, *inter alia*, statutory damages and injunctive relief for Defendants' violations.

***PARTIES***

6.     Plaintiff is a resident of the County of Los Angeles, in the State of California.  He is, and at all times relevant to this action was, a "person" as defined under 47 U.S.C. § 153.

7.     Plaintiff is informed and believes, and based thereon alleges, that Defendant CEC is a Delaware company with its principal place of business located at One Caesars Palace Drive, Las Vegas,

Nevada 89109.  CEC is, and at all times relevant to this action was, a "person" as defined under 47 U.S.C. § 153.

8.    Plaintiff is informed and believes, and based thereon alleges, that Defendant Caesars Palace is a Nevada company with its principal place of business located at One Caesars Palace Drive, Las Vegas, Nevada 89109.  Caesars Palace is, and at all times relevant to this action was, a "person" as defined under 47 U.S.C. § 153.

## *ALLEGATIONS CONCERNING DEFENDANTS' ROLL-OUT*
## *OF THE IVY VIRTUAL CONCIERGE*

9.    Defendant CEC is one of the largest gaming companies in the world, and owns and operates over fifty casinos and hotels under various brands.[1]  Defendant Caesars Palace is one of the hotel casinos operated by CEC.

10.    In or before 2016, CEC began working with a California-based company called GoMoment to roll out a guest-engagement platform known as the Ivy virtual concierge at certain of its properties.  Similar to Siri, Alexa, and Google Assistant, Ivy is a form of artificial intelligence that is used to power a messaging service designed to interact with hotel guests.  As one writer puts it, "[w]hile Siri inhabits an iPhone, Alexa her Echo and Google Assistant hangs out in the office and home, Ivy is a more itinerant sort:  She's the world's largest travel chatbot, working in hotels across the country."[2]  GoMoment explains on its website homepage that the Ivy product has been "[d]esigned in concert with hotel owners and operators," and has "ushered in the next generation of guest engagement and online reputation management."[3]  According to GoMoment, Ivy is employed by some of the world's largest hotel brands, including Hilton, Wyndham, Doubletree, and others.[4]

11.    Plaintiff is informed and believes, and based thereon alleges, that Defendants and GoMoment have had, and continue to have, a close business partnership.  Describing the

---

[1] Wikipedia, https://en.wikipedia.org/wiki/Caesars_Entertainment_Corporation (last updated July 30, 2018).

[2] Andy Vasoyan, "Hey Ivy, Where's the Pool?," Playa Vista Direct, https://playavistadirect.com/hey-ivy-wheres-pool/ (Feb. 24, 2018).

[3] GoMoment, http://www.gomoment.com/ (last visited July 18, 2018).

[4] Id.

1    implementation of Ivy, CEC's Chief Experience Officer, Michael Marino, stated:

2          GoMoment has been an excellent partner to work with since we initially launched Ivy in

3          December 2016. They have a tried and true execution plan that allows us to launch Ivy at

4          a property with less than a month lead time. The set-up is fairly straightforward with

5          drafting answers to the common questions that we train Ivy on in the IBM Watson

6          platform, setting up user accounts and conducting the on-site trainings for the agents.[5]

7          12.     Plaintiff is informed and believes, and based thereon alleges, that the Ivy platform

8    through which the messages at issue were sent was developed, and is maintained, by GoMoment in

9    California. Plaintiff is further informed and believes, and based thereon alleges, that, at all relevant

10   times, Defendants were aware of this due to their close working relationship with GoMoment.

11         13.     A prime motivation for the implementation of Ivy was and remains boosting hotel

12   revenue by increasing the purchase of hotel-related services and products, such as restaurants, shows,

13   and the like. GoMoment's homepage states: "Drive more profitable revenue on autopilot with

14   customized incentives. Keep your guests coming back with personalized service."[6] GoMoment has

15   explained:

16                           **How to increase hotel revenue**

17          Hotels and resorts are always looking for a way to increase revenue and improve

18          the guest experience. But what is the best way to do so? A combination of automation

19          and the human touch.

20          What if you could automatically offer guess a reservation at the on-site restaurant,

21          in a non-intrusive way? What if you could answer your guests [*sic*] questions instantly

22          without requiring them to call or walk to the front desk? What if that answer did not

23          require any time or focus from your staff?

24          Well, that's exactly what Ivy does, Maximizing [*sic*] hotel revenue, while

25          improving guest review scores at the same time.

26   ------------------------------------------------

27   [5] Corris Little, "Ivy's Presence Grows Across Caesars Entertainment Portfolio, <u>Hotel Business</u>, https://www.hotelbusiness.com/ivys-presence-grows-across-caesars-entertainment-portfolio/ (Feb. 28, 2018).

28   [6] GoMoment, http://www.gomoment.com/ (last visited July 18, 2018).

Ivy is the only guest messaging service powered by artificial intelligence (built in partnership with IBM Watson). She is empowering hotels and resorts to deliver a world-class experience while generating additional revenue, all with no app download required.[7]

14. Plaintiff is informed and believes, and based thereon alleges, that Ivy was rolled out at Caesars Palace in about the summer of 2017. In a subsequent press release concerning the roll-out, Defendant CEC acknowledged the revenue-generating power of Ivy, stating:

Besides automating typical service questions, Ivy$^{TM}$ routes complex requests and service issues to hotel staff for improved efficiency and delighted guests. ***Ivy$^{TM}$ can also book restaurant reservations, spa appointments, and other revenue-driving services.***[8]

15. Ivy has been rolled-out at various other CEC properties, including Nobu Hotel (at Caesars Palace), The Cromwell, and The Linq Hotel & Casino. Plaintiff is informed and believes, and based thereon alleges, that Defendants directed the roll-out of Ivy and were directly involved in determining message content and tone, as well as to whom and when messages would be sent.

## *ALLEGATIONS CONCERNING PLAINTIFF'S EXPERIENCE*

16. On or about April 6, 2018, Plaintiff checked into Caesars Palace. During the check-in process at the front desk, he was asked for, and he orally provided, his cellular-telephone number (which has a California prefix) to the receptionist. Plaintiff also provided his California address as part of the registration process. Approximately thirty minutes after check-in, he received the following text message from Defendants:

Hi! I'm Ivy, your personal concierge at Caesars Palace. Text me for hotel information, towels, housekeeping requests and more. Text STOP to quit. Info/terms: j.mp/IvyTerms

I look forward to assisting you during your stay. Text me your first request now!

Plaintiff did not respond to this text message.

17. In the text message that Plaintiff received, the portion reading "j.mp/IvyTerms" was a

---

[7] GoMoment, https://medium.com/@ivygomoment/how-to-increase-hotel-revenue-b7702235f77b (last visited July 18, 2018) (emphasis in original).

[8] CEC, "Caesars Entertainment Law Vegas Resorts Elevates Customer Service with Ivy, Personalized Virtual Concierge Service, CISION PR Newswire, https://www.prnews wire.com/news-releases/caesars-entertainment-las-vegas-resorts-elevates-customer-service-with-ivy-personalized-virtual-concierge-service-300579316.html (Jan. 8, 2018) (emphasis supplied).

link to a webpage.  Clicking on the link opens up a webpage that promotes the commercial availability and quality of Ivy, stating, *inter alia*:

### Ivy will help you during your stay!

**Want to make a request?**  Close this page, go back to the text message you received, and just reply.  You can ask for towels, get the wifi passcode, or even ask for local recommendations.  If Ivy doesn't know the answer, she will connect you with the front desk.  Ivy is available anywhere, anytime during your stay!  So please use her!

**Want to Opt-Out?**  If you do not want to text with Ivy, go back to the text message your received and reply STOP.

**How Does Ivy Work?**  Ivy works simply by text message.  To get started, close this page and reply to the text message you received.

**What Can Ivy Help Me With?**  You can ask for towels, get the wifi passcode, or even ask for local recommendations.  If Ivy doesn't know the answer, she will connect you with hotel staff.  It's simple.  Go back to the text message your received and reply now to make your first request.

**Why Ivy?**  Created by busy travelers, Ivy exists to serve your needs while you're on the go.  Hotel staff can't always attend to your every need right away, so Ivy was created to be your virtual assistant during your stay.  We hope you enjoy Ivy and your travels!  Ivy was developed by Go Moment, and is available to hotels worldwide.  Sales & media inquiries can be directed to the Contact Us link below.

**Issues or Opting Out:**  Reply "STOP" or "UNSUBSCRIBE" at any time to permanently opt out of Ivy service.  Ivy strives to be helpful in all her interactions, and takes abuse seriously.  If Ivy was anything but helpful to you, please let us know using the Contact Us link below.[9]

     18.     Plaintiff is informed and believes, and based thereon alleges, that other guests of Caesars Palace, as well as the guests of other CEC properties that have rolled out Ivy, are sent messages by

---

[9] GoMoment, http://info.gomoment.com/ivy/ (last visited July 24, 2018).

1  Defendants upon check-in that are the same as, or substantially similar to, the message that Plaintiff

2  received.  Plaintiff is are further informed and believes, and based thereon alleges, that these messages

3  were sent for the purpose of both advertising the availability of the Ivy product, on the one hand, and

4  encouraging the patronage of hotel-related products and services, on the other hand.  In addition,

5  Plaintiff is informed and believes, and based thereon alleges, that, when these messages are responded to

6  by a guest who is seeking a product or a service (*e.g.*, a restaurant or a show), only products and services

7  offered by CEC properties are recommended.

8        19.    At no time prior to receiving the text message referenced in paragraph 16 had Plaintiff

9  ever signed a document, whether in paper or electronic form, reciting that Defendants were authorized to

10  send text messages to him using an automatic telephone dialing system for telemarketing or advertising

11  purposes.  Similarly, at no time prior to receiving the text message referenced in paragraph 16 had

12  Plaintiff ever signed a document, whether in paper or electronic form, reciting that he was not required

13  to provide consent as a condition of purchasing any goods or services.

14        20.    It is apparent from the context of the text messages above that the messages were not sent

15  with an emergency purpose, but instead to advertise the availability of the Ivy product and to promote

16  services, activities, and events provided by Caesars Palace.

17        21.    At all times relevant to this action, Plaintiff's cellular-telephone number was linked to a

18  subscription plan under which he was charged each month for cellular-telephone and data services.

19        22.    Plaintiff is informed and believes, and based thereon alleges, that his cellular-telephone

20  number, along with numerous other telephone numbers, was entered into the Ivy platform or into a

21  database that the Ivy platform is capable of accessing to mass-dial and/or automatically dial numbers,

22  and that Defendants sent the message referenced in paragraph 16 using the Ivy platform.

23        23.    Plaintiff is informed and believes, and based thereon alleges, that thousands of similar

24  messages were and continue to be sent *en masse* to the cellular telephones of the guests at Caesars

25  Palace and other CEC properties.  Plaintiff is further informed and believes, and based thereon alleges,

26  that all of these text messages were sent using the equipment or software referenced in paragraph 22

27  *supra*.  In addition, Plaintiff is informed and believes, and based thereon alleges, that, at no time prior to

28  receiving these text messages had any guest ever signed a document, whether in paper or electronic

form, disclosing that the guests were authorizing the delivery of telemarketing or advertising messages by way of an automatic telephone dialing system, or disclosing that the guests were not required to provide consent as a condition of purchasing any goods or services.

### CLASS-ACTION ALLEGATIONS

24.    Plaintiff seeks to represent the following Classes under section 382 of the California Code of Civil Procedure:

> **CEC Class**: All persons who, during the four years prior to the filing of the Complaint in this action through the date of class certification, received one or more text messages from the Ivy concierge sent by a hotel owned and/or operated by CEC.

> **Caesars Palace Subclass**: All persons who, during the four years prior to the filing of the Complaint in this action through the date of class certification, received one or more text messages from the Ivy concierge sent by Caesars Palace.

25.    Plaintiff reserves the right to amend or modify the proposed Classes, or to propose further subclasses or limitations to particular issues, in response to facts later ascertained.

26.    *Numerosity*. The identities of Class Members may be ascertained from Defendants' own business and marketing records, as well as the records of Defendants' telephone provider(s). Joinder of all Class Members would be impracticable due to the sizeable number of such Members and their likely lack of resources to initiate individual claims. Plaintiff estimates that thousands of text messages were sent to well-over the forty individuals required for numerosity purposes. Also, as explained below, the amount that is owed to any given Class Member under the TCPA is relatively small, making it impractical for them to bring their own individual suits.

27.    *Commonality*. There are questions of law and fact that are common to the Classes that predominate over any questions affecting only individual Class Members. These common questions include, without limitation:

a)    whether the text messages constitute telemarketing and/or advertising within the meaning of the TCPA and its regulations;

b)    whether the equipment used to send the text messages constitutes an automatic telephone dialing system within the meaning of the TCPA and its regulations;

CLASS-ACTION COMPL.

c)      whether prior express written consent was required under the TCPA and its regulations before sending any of the text messages; and,

d)      whether the outright failure to secure any prior express written consent constitutes willful and knowing behavior within the meaning of the TCPA and its regulations.

28.     **Typicality**.  Plaintiff's claims are typical of those of Class Members because he received a text message from Ivy; he never provided prior express written consent to receive the text message; and the text message was sent to his cellular telephones for an advertising and/or marketing purpose using the same equipment used to send text messages to all Class Members.

29.     **Adequacy**.  Plaintiff will fairly and adequately represent and protect the interests of the Classes.  He is not aware of any conflicts that he has with Class Members, and he plans on pursuing the litigation vigorously.  He also has the same interests as those of the Classes, and he has retained counsel who are competent and experienced in class-action litigation.  In addition, he has been actively involved in the litigation, he will continue to participate and be available for the duration of the litigation, and he understand the duties that he holds to the Classes.

30.     **Superiority**.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Again, the individual joinder of all Class Members is impracticable because of the relatively small recovery amounts at stake and the relative lack of resources available for individual Class Members vis-à-vis the large corporate Defendants.  Additionally, the judicial system would be burdened with multiple trials of the same issues, and the potential for inconsistent or contradictory judgments would increase.  The common questions detailed above, in fact, predominate in this action, as Class Members' claims arise out of the same course of conduct to which Plaintiff was himself subject.  A class action therefore would conserve the resources of the parties and the Court while protecting the rights of Class Members.  Defendants' conduct as described above is unlawful, continuing, and capable of repetition, and it will continue unless restrained and enjoined by the Court.  Moreover, it is a matter of public interest to obtain definitive answers to the legality of Defendants' actions in a single case.

/ / / / /

8
CLASS-ACTION COMPL.

### FIRST CAUSE OF ACTION

*Violation of the TCPA*

*47 U.S.C. § 227*

31.    Plaintiff re-pleads, re-alleges, and incorporates by reference each and every allegation set forth in this Complaint.

32.    The United States Congress enacted the TCPA in order to balance individual privacy rights with legitimate telemarketing practices.  In enacting this statute, Congress found:

       (1)    The use of the telephone to market goods and services to the home and other businesses is now pervasive due to the increased use of cost-effective telemarketing techniques.

       . . . .

       (10)    Evidence compiled by the Congress indicates that residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy.

       (11)    Technologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer.

       (12)    Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

TCPA of 1991, PL 102–243, December 20, 1991, 105 Stat 2394.

33.    The TCPA specifically prohibits automated calls or messages to consumers' cellular-telephone numbers without first obtaining the express consent or permission of the consumers:

       It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States[,] (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the

called party) using any automatic telephone dialing system . . . (iii) to any telephone

number assigned to a . . . cellular telephone service . . . .

47 U.S.C. § 227(b)(1). A text message is a "call" within the meaning of the TCPA. E.g., <u>Satterfield v.</u> <u>Simon & Schuster, Inc.</u>, 569 F.3d 946, 954 (9th Cir. 2009).

34. Under the relevant regulation, effective October 16, 2013, "prior express consent" as used in subsection (b)(1)(A)(iii) of the TCPA means "prior express *written* consent" for all telemarketing or advertising messages. 47 C.F.R. § 64.1200(a)(2) (emphasis supplied). Such consent must be signed by the consumer; disclose that the consumer authorizes the entity on whose behalf the message is sent to deliver, or cause to be delivered, telemarketing or advertising messages by way of an automatic telephone dialing system; and disclose that the consumer is not required to provide consent as a condition of purchasing any goods or services. <u>Id.</u> § 64.1200(f)(8). As alleged above, neither Plaintiff nor any Class Member ever signed, whether in paper or electronic form, a document containing these disclosures.

35. The foregoing acts and omissions of Defendants constitute a direct violation of the TCPA. Defendants were and are aware of the TCPA and its requirements, and, on information and belief, intentionally violated the law in an effort to maximize profits. Defendants' violations therefore were willful.

36. The TCPA establishes a private right of action for sending unauthorized messages to consumers:

> A person or entity may, if otherwise permitted by the laws or rules of court of a
> State, bring in an appropriate court of that State (A) an action based on a violation of this
> subsection or the regulations prescribed under this subsection to enjoin such violation,
> (B) an action to recover for actual monetary loss from such a violation, or to receive $500
> in damages for each such violation, whichever is greater, or (C) both such actions. If the
> court finds that the defendant willfully or knowingly violated this subsection or the
> regulations prescribed under this subsection, the court may, in its discretion, increase the
> amount of the award to an amount equal to not more than 3 times the amount available
> under subparagraph (B) of this paragraph.

47 U.S.C. § 227(b)(3).  Pursuant to 47 U.S.C. § 227(b)(3)(B), Plaintiff and Class Members are entitled to an award of $500 in statutory damages for each and every text message that they received.  Moreover, because Defendants willfully and knowingly violated the TCPA as alleged above, Plaintiff and Class Members are entitled to treble damages.  Finally, pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff and Class Members are entitled to injunctive relief.

### *PRAYER FOR RELIEF*

**WHEREFORE**, Plaintiff prays for judgment as follows:

1.      an order certifying the Classes under section 382 of the California Code of Civil Procedure;

2.      judgment in favor of Plaintiff and Class Members for the period of time commencing four years prior to the filing of the Complaint in this action, for statutory treble damages against Defendants jointly and severally, as well as for injunctive relief;

3.      an award of pre-judgment and post-judgment interest, to the extent allowable by law;

4.      an award of attorney's fees and costs of suit, to the extent allowable by law; and

5.      such further relief as the Court deems fit and proper.

Dated:  August 2, 2018

GREENSTONE LAW APC

By: _____
Mark S. Greenstone

GLANCY PRONGAY & MURRAY LLP
Lionel Z. Glancy
Marc L. Godino
Danielle L. Manning

JAURIGUE LAW GROUP
Michael J. Jaurigue
Abigail A. Zelenski
David Zelenski

*Attorneys for Plaintiff*

/ / / / /

CLASS-ACTION COMPL.