**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

JUAN CASTILLO, as an individual and on
behalf of all others similarly situated,

                    Plaintiff,

    vs.

CAESARS ENTERTAINMENT
CORPORATION, *et al.*,

                  Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

Case No.: 2:18-cv-02297-GMN-NJK

**ORDER**

       Pending before the Court is the Motion on for Judgment on the Pleadings, (ECF No. 47),
filed by Defendants Caesars Entertainment Corporation ("CEC") and Desert Palace, LLC
("Caesars Palace") (collectively "Defendants"). Plaintiff Juan Castillo ("Plaintiff") filed a
Response, (ECF No. 72), and Defendants filed a Reply, (ECF No. 74).

       Also pending before the Court is Defendants' Motion to Stay Case, (ECF No. 48).
Plaintiff filed a Response, (ECF No. 73), and Defendants filed a Reply, (ECF No. 75).

**I.     BACKGROUND**

       This case arises out of Defendants' alleged violations of the Telephone Consumer
Protection Act, 47 U.S.C. § 227 ("TCPA") by way of its "Ivy virtual concierge." (Compl.
¶¶ 10, 31–36, Ex. A to Notice of Removal, ECF No. 1-1). Plaintiff alleges that in April 2018,
Plaintiff stayed in Defendants' hotel, Caesars Palace, in Las Vegas, Nevada. (Compl. ¶ 16).
Once at the front desk, while checking in, he orally provided his cell phone number to the
receptionist. (*Id.*). About thirty minutes later, he received a text message from Defendants' Ivy
virtual concierge service telling him, *inter alia*, to "[t]ext me for hotel information, towels,
housekeeping requests and more." (*Id.*). Additionally, Plaintiff claims that at no time prior to

1 receiving Defendants' text message did Plaintiff expressly authorize Defendants to send him

2 text messages using an automatic telephone dialing system for telemarketing or advertising

3 purposes. (*Id.* ¶ 19).

4         On August 2, 2018, Plaintiff brought this class-action in the Superior Court of the State

5 of California, Marin County alleging one claim against Defendants for violation of the TCPA.

6 (Compl. ¶¶ 31–36). Subsequently, Defendants removed to the U.S. District Court, Northern

7 District of California, invoking federal question subject matter jurisdiction. (Notice of

8 Removal, ECF No. 1). The case was subsequently transferred to the District of Nevada in

9 December 2018. (J. Chen Order, ECF No. 33); (Min. Order, ECF No. 36). On December 21,

10 2018, Defendants filed the instant Motion for Judgment on the Pleadings and Motion to Stay

11 Case. This Order now follows.

12 **II.**      **LEGAL STANDARD**

13         "After the pleadings are closed—but early enough not to delay trial—a party may move

14 for judgment on the pleadings." Fed. R. Civ. P. 12(c). Motions for judgment on the pleadings

15 pursuant to Federal Rule of Civil Procedure 12(c) are "functionally identical" to motions to

16 dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Dworkin v.*

17 *Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989).

18         In reviewing a motion for judgment on the pleadings pursuant to Rule 12(c), a court

19 "must accept all factual allegations in the complaint as true and construe them in the light most

20 favorable to the non-moving party." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

21         "[J]udgment on the pleadings is proper 'when, taking all the allegations in the non-

22 moving party's pleadings as true, the moving party is entitled to judgment as a matter of law.'"

23 *Ventress v. Japan Airlines*, 486 F.3d 1111, 1114 (9th Cir. 2007) (citation omitted). The

24 allegations of the nonmoving party must be accepted as true while any allegations made by the

25

moving party that have been denied or contradicted are assumed to be false. *MacDonald v. Grace Church Seattle*, 457 F.3d 1079, 1081 (9th Cir. 2006).

## III.    **DISCUSSION**

### A.    **Motion for Stay**

Defendants provide two grounds for stay: (1) the Ninth Circuit will soon rule on Defendants' constitutional affirmative defense; and (2) the FCC's interpretation of the term "ATDS" in a pending proceeding will determine whether Plaintiff can state a claim. (Mot. Stay 3:5–6, ECF No. 48).  With regard to the latter, Defendants invoke the primary jurisdiction doctrine as well as the Court's inherent authority in support of its Motion to Stay.

#### 1.    *Constitutional defense*

Defendants argue that the TCPA is a content-based regulation of speech triggering strict scrutiny and that the TCPA fails strict scrutiny. (Mot. J. at 6–14).  Defendants further state that the Ninth Circuit will be issuing a ruling on this issue and therefore, the Court should stay this matter until that decision is announced.  The Court finds that this argument is moot as the Ninth Circuit made its ruling on this issue in July 2019. *Gallion v. United States*, 772 F. App'x 604, 605 (9th Cir. 2019) (affirming the district court's ruling that the TCPA is constitutional). Insofar as Defendants' Motion for Stay relies on this argument, the Court denies this Motion.

#### 2.    *FCC's interpretation of ATDS*

##### **Primary Jurisdiction**

Primary jurisdiction is "a prudential doctrine under which courts may, under appropriate circumstances, determine that the initial decision-making responsibility should be performed by the relevant agency rather than the courts." *Syntek Semiconductor Co. v. Microchip Tech. Inc.*, 307 F.3d 775, 780 (9th Cir. 2002).  In evaluating primary jurisdiction, Ninth Circuit courts consider "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that

subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 760 (9th Cir. 2015) (quoting *Syntek*, 307 F.3d at 781).

The primary jurisdiction doctrine does not apply here. "The doctrine is reserved for a 'limited set of circumstances' that 'requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency.'" *Astiana*, 783 F.3d at 760 (citation omitted). Given the *Marks* Court's construction of the TCPA, the statutory definition of an ATDS is neither an issue of first impression, nor one that judges are incompetent to decide. Applying this rationale, Ninth Circuit courts have consistently rejected requests to stay actions pending further FCC rulemaking. *See, e.g., Nicholson, v. REI Energy, LLC*, No. 3:18-cv-00203-HZ, 370 F. Supp. 3d 1199, 1206, 2019 WL 993624, at \*5 (D. Or. Feb. 28, 2019) (holding that in light of *Marks*, "this case presents neither an issue of first impression nor a question better suited to the expertise of the [FCC]."); *Knapper v. Cox Commc'ns, Inc.*, No. 17-cv-00913-PHX-SPL, 2019 WL 250430, at \*2 (D. Ariz. Jan. 17, 2019); ("*Marks* represents binding law in this Circuit. Consequently, there is no matter of first impression or of such complexity inhibiting this Court from proceeding."); *Larson v. Harman Mgmt. Corp.*, No. 1:16-cv-00219-DAD-SKO, 2018 WL 6459964, at \*4 (E.D. Cal. Dec. 10, 2018) ("The Ninth Circuit's willingness to decide the meaning of an ATDS in Marks also indicates that defining that term as used in the applicable statute is within the conventional experience of judges."); *Pieterson v. Wells Fargo Bank, N.A.*, No. 17-cv-02306-EDL, 2018 WL 3241069, at \*3 (N.D. Cal. July 2, 2018) ("[T]he primary jurisdiction doctrine does not comfortably fit the circumstances of this case because the issues before the FCC are not ones of first impression and controlling or persuasive law already exists.").

Considerations of judicial efficiency also counsel against a stay. "The 'deciding factor' in determining whether the primary jurisdiction doctrine should apply is 'efficiency.'" *Reid v.*

*Johnson & Johnson*, 780 F.3d 952, 967 (9th Cir. 2015) (quoting *Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1165 (9th Cir. 2007)). Aside for Defendants' speculation, there is no indication that a new FCC order is imminent or any assurance such an order will conclusively resolve the ATDS issue. As another court explained, "this cycle of staying a case while an FCC order is pending only to have the FCC order challenged in court has played out before, demonstrating the real possibility of indefinite delay." *See Pieterson*, 2018 WL 3241069, at \*5*; see also Larson*, 2018 WL 6459964, at \*4 ("[A]ny action from the FCC will be subject to further challenge, which is exactly what happened with the 2015 Declaratory Ruling."); *Goldschmidt v. Rack Room Shoes*, No. 18-21220, 2019 WL 166629, at \*1 (S.D. Fla. Jan. 4, 2019) ("[D]espite Defendant's assertion that the ruling is expected by late 2018 or early 2019, there is no real indication that the FCC will in fact issue a ruling by a certain date.").

In sum, the Court is unconvinced that judges are incompetent to construe the TCPA to define the contours of an ATDS. Moreover, even if Defendants' speculation is correct and the FCC "will soon rule" on this definitional question, the Court is skeptical that such an order would bring finality to the issue of what constitutes an ATDS. Accordingly, the Court declines to stay this matter under the primary jurisdiction doctrine.

**Inherent Authority to Stay**

"A district court has discretionary power to stay proceedings in its own court under [*Landis* ]." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005) (citing *Landis v. North American Co.*, 299 U.S. 248, 254 (1936)). When deciding whether to issue a stay, the court must weigh competing interests including: (1) the possible damage which may result from the granting of a stay; (2) the hardship or inequity which a party may suffer in being required to go forward; and (3) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay. *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). The proponent of a stay bears the

burden of establishing its need. *Clinton v. Jones*, 520 U.S. 681, 708 (1997) (citing *Landis*, 299 U.S. at 255).

As an initial matter, *Landis* stays "should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time." *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 864 (9th Cir. 1979); *Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007) ("Generally, stays should not be indefinite in nature."). As discussed above, the Court is not convinced that an FCC order is imminent or that such an order will settle the dispute over the definition of an ATDS. Just as the 2015 FCC Order gave rise to the *ACA Int'l* consolidated appeal, which Defendants reference in their Motion, a new FCC order may very well bring about more legal challenges, further delaying resolution. Thus, a stay here would not serve the orderly course of justice.

As to the balance of hardships, Defendants claim that without a stay, Defendants and Plaintiff will be forced to "engage in costly discovery as well as briefing and argument even though the Ninth Circuit or FCC will soon issue decisions that may well absolve Defendants of liability or, at the very least, fundamentally alter or narrow the issues." (Mot. Stay 10:10–12). However, in this Circuit, "being required to defend a suit, without more, does not constitute a clear case of hardship or inequity" for purposes of a stay. *Hawai'i v. Trump*, 233 F. Supp. 3d 850, 854 (D. Haw. 2017) (quoting *Lockyer*, 398 F.3d at 1112). Additionally, Defendants' argument presupposes that the FCC's order will be favorable to its position. Because a future FCC order may support either party's case, the Court finds the balance of the hardships is neutralized.

Finally, with respect to potential damage arising from the stay, Defendants argue that, "Plaintiff here would not suffer prejudice were a stay granted because delaying recovery in a TCPA case, whether monetary or injunctive, does not qualify as prejudice counseling against a stay." (*See* Mot. Stay 8:25–10:9). However, because Defendants cannot tell us with any degree

1  of certainty whether the FCC will issue any new rulings or guidance, a stay would be indefinite

2  and prejudice Plaintiff's right to have his claim resolved. *See Singer v. Las Vegas Athletic*

3  *Clubs*, 376 F. Supp. 3d 1062, 1070 (D. Nev. 2019).

4      Accordingly, the Court declines to issue a *Landis* stay.  Defendants have not carried its

5  burden of demonstrating hardship or that a stay would serve the orderly course of justice.  To

6  the extent Defendants has established that a stay would result in *de minimis* harm to Plaintiff,

7  this consideration is outweighed by the other *Landis* factors.

8      **B.      Motion for Judgment on the Pleadings**

9      The TCPA prohibits any call using automatic telephone dialing system or an artificial or

10  prerecorded voice to a telephone without prior express consent by the person being called,

11  unless the call is for emergency purposes. *See* 47 U.S.C. § 227(b)(l)(A)(iii); *Satterfield v. Simon*

12  *& Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) ("The TCPA makes it unlawful "to make

13  any call" using an ATDS.").  "The purpose and history of the TCPA indicate that Congress was

14  trying to prohibit the use of ATDSs to communicate with others by telephone in a manner that

15  would be an invasion of privacy." *Satterfield*, 569 F.3d at 952.  The TCPA authorizes a court,

16  in its discretion, to treble the amount of statutory damages—increasing the penalties up to

17  threefold—if the court finds that the defendant "willfully or knowingly" violated the law. *See*

18  47 U.S.C. § 227(b)(3).

19      The Ninth Circuit has set forth three elements for a TCPA violation: (1) the defendant

20  called a cellular telephone number; (2) using an automatic telephone dialing system or an

21  artificial or prerecorded voice; (3) without the recipient's prior express consent." *See, e.g.,*

22  *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012); *Kristensen v.*

23  *Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1300 (D. Nev. 2014).  "Express consent is

24  '[c]onsent that is clearly and unmistakably stated.'" *Satterfield*, 569 F.3d at 955 (quoting

25  Black's Law Dictionary 323 (8th ed. 2004)) (alteration in original).

"Express consent is not an element of a plaintiff's prima facie case but is an affirmative defense for which the defendant bears the burden of proof." *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1044 (9th Cir. 2017). The TCPA does not explicitly grant consumers the right to revoke their prior express consent. *Id*. at 1047 (citing 47 U.S.C. § 227). However, the Ninth Circuit has held that consumers may revoke their prior express consent without temporal limitations. *Id*. at 1048. "Revocation of consent must be clearly made and express a desire not to be called or texted." *Id*.

Here, Defendants argue that Plaintiff cannot state a claim under the TCPA because: (1) the TCPA violates the First Amendment both facially and as applied; (2) Plaintiff fails to allege a plausible set of facts that would show Defendants' text message with sent with an ATDS; (3) Plaintiff provided the requisite prior express consent. (Mot. J., ECF No. 47).

With respect to Defendants' first argument which challenges the constitutionality of the TCPA, this argument fails. *See, e.g.*, *Ventress*, 486 F.3d at 1114 ("[J]udgment on the pleadings is proper 'when, taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law.'").

Defendants' second argument contends that Plaintiff does not allege a plausible set of facts that would show Defendant's text message with sent with an ATDS. Here, Plaintiff alleges that the text message that forms the basis of this case was sent using equipment capable of dialing numbers *en masse* from a stored database, "and/or automatically [dialing] numbers." (Compl. ¶¶ 22, 23). In *Marks v. Crunch San Diego*, 904 F.3d 1041 (9th Cir. 2018), the Ninth Circuit held that an ATDS encompasses systems that make automatic calls from lists of recipients. *Id.* at 149–50, 1051–53. Thus, under *Marks*, an ATDS "means equipment which has the capacity—(1) to store numbers to be called *or* (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers automatically (even if the system must be turned on or triggered by a person)." *Id.* at 1052 (emphasis added).

Accordingly, under *Marks*, Plaintiff states a plausible set of facts that would show Defendant's text message with sent with an ATDS.

Defendants' last argument is that Plaintiff provided the requisite prior express consent. However, "[e]xpress consent is not an element of a plaintiff's prima facie case but is an affirmative defense for which the defendant bears the burden of proof." *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1044 (9th Cir. 2017). To the extent that Defendant asserts that the message at issue does not constitute telemarketing or advertising, and therefore, prior express consent is not required, this assertion is contradicted by the allegations in Plaintiff's Complaint. As such, Defendants' contrary allegations are assumed to be false. *MacDonald v. Grace Church Seattle*, 457 F.3d 1079, 1081 (9th Cir. 2006) ("The allegations of the nonmoving party must be accepted as true while any allegations made by the moving party that have been denied or contradicted are assumed to be false."). Accordingly, Plaintiff sufficiently states a claim under the TPCA.

## IV.      CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion to Stay, (ECF No. 48), is **DENIED**.

**IT IS HEREBY ORDERED** that Defendants' Motion for Judgment on the Pleadings, (ECF No. 47), is **DENIED**.

**DATED** this __30__ day of September, 2019.

_____
Gloria M. Navarro, District Judge
United States District Court